UNITED STATES v. SIMON.

(Circuit Court, D. Massachusetts. May 25, 1909.)

No 3.

1. ALIENS (§ 67*)—NATURALIZATION—CANCELLATION OF NATURALIZATION CERTIFICATE—JURISDICTION OF COURTS.

Naturalization Act June 29, 1906, c. 3592, § 15, 34 Stat. 601 (U. S. Comp. St. Supp. 1907, p. 427), which makes it the duty of district attorneys on affidavit showing good cause therefor to institute proceedings to cancel the certificate of naturalization of any naturalized citizen on the ground of fraud or on the ground that such certificate was illegally procured "in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit," confers jurisdiction on such court to cancel a certificate, whether granted by that or any other court, state or federal.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 67.*]

2. ALIENS (§ 71½*) — NATURALIZATION — CANCELLATION OF CERTIFICATE—CONSTITUTIONALITY OF STATUTE.

Naturalization Act June 29, 1906, c. 3592, § 15, 34 Stat. 601 (U. S. Comp. St. Supp. 1907, p. 427), which authorizes a court to cancel a naturalization certificate although granted by another court, is constitutional.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 71½.*]

3. ALIENS (§ 71*)—NATURALIZATION—CERTIFICATE ILLEGALLY OBTAINED.

The continuous residence of an alien in the United States for five years, necessary for his naturalization, is broken by a physical absence from the United States for seven months, during which time he obtains naturalization into another allegiance, and a certificate of naturalization into the United States granted under such circumstances is subject to cancellation either on the ground of fraud, if he misrepresented the facts, or on the ground that it was illegally procured.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 71.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The Assistant United States Attorney, for naturalization.
William H. Lewis, for the United States.
Guy A. Ham, for defendant.

LOWELL, Circuit Judge. The United States filed a petition to va-
cate the respondent's naturalization, upon the ground that it was
illegally procured, in that Simon "had not resided continuously in the
United States for a period of five years immediately preceding the
date of his petition for citizenship."

From the agreed statement of facts, it appeared that Simon, being
a Russian, came to Canada in August, 1890, and there remained until
January 26, 1896, when he "migrated" to New York. On June, 1896,
"he returned to Canada for the purpose of closing up some business
interests that he had left there when he came to the United States.
At the time he left the United States, he intended to return, and went
to Canada merely for the purpose indicated above."

On June 18, 1896, while in Montreal, Simon filed a petition for
British naturalization. In his "oath of residence" appended thereto,
he swore that "in the period of seven years preceding this date (of
the petition) I have resided seven years in the Dominion of Canada
with intent to settle therein without having been during such seven
years a stated resident in any foreign country." This was a false
statement, but apparently it imposed upon the Canadian court. On
the same day, he took the oath of allegiance to Queen Victoria, though
the certificate of naturalization bears date September 21, 1906.

"On January 20, 1897, he returned to New York, since which time
he has lived in the United States." On March 10, 1899, he made his
preliminary declaration at Salem, Mass., in the First district court of
Essex county. His petition alleged that he was an alien, born in
Russia; that in January, 1896, "it was then and still is bona fide his
intention to become a citizen of the United States, and to renounce
forever all allegiance and fidelity to any foreign prince, potentate,
state or sovereignty whatsoever, and particularly to Nicholas II, Czar
of Russia, into whose allegiance he was born, and to Victoria, Queen
of the United Kingdom of Great Britain and Ireland, into whose al-
legiance he was naturalized, whose subject he has heretofore been."
As he owed no British allegiance in January, 1896, the statement was
untrue, though Simon may have erred from a confusion of his waver-
ing intentions and multiplied allegiances. The preliminary declara-
tion was duly recorded, and on April 20, 1901, Simon was naturalized
in the same court. His former citizenship was not stated in the cer-
tificate of naturalization, nor the form of his renunciation of al-
legiance.

Section 15, Naturalization Act June 29, 1906, c. 3592, 34 Stat. 601
(U. S. Comp. St. Supp. 1907, p. 427), provides:

"That it shall be the duty of the United States district attorney for the
respective districts, upon affidavit showing good cause therefor, to institute
proceedings in any court having jurisdiction to naturalize aliens in the ju-
dicial district in which the naturalized citizen may reside at the time of bring-
ing the suit, for the purpose of setting aside and cancelling the certificate
of citizenship on the ground of fraud or on the ground that such certificate
of citizenship was illegally procured."

The respondent contends that this court is without jurisdiction to vacate an order or decree of naturalization granted by another court which had jurisdiction of the subject-matter. But the language of the statute explicitly contradicts this contention. The act gives jurisdiction to cancel the naturalization certificate, not to the court which granted it, but to any court of naturalization in the district of the residence of the naturalized person. Whether any jurisdiction theretofore existing in the former court is thus taken away need not be discussed here.

The respondent further contends that the act of 1906, as thus construed, is unconstitutional. To put the matter most favorably for the respondent, unconstitutionality is not so clear as to warrant a court of first instance in so holding. United States v. Gleason, 90 Fed. 778, 33 C. C. A. 272, and Pintsch Co. v. Bergin (C. C.) 84 Fed. 140, were decided before the passage of the act of 1906.

The petition does not allege Simon's fraud, but at the hearing it was assumed on both sides that this ground of illegality was open to the United States. So far as the United States relies upon fraud, it is bound to prove the fraud. This might have been inferred sufficiently from the admitted facts, were it not that the preliminary declaration made in the state court in 1899 expressly stated that Simon was naturalized into British allegiance. Presumably this declaration was before the state court and was considered by it when Simon was naturalized. Upon the evidence presented to this court it cannot know certainly upon what theory the state court proceeded in naturalizing Simon. While admitting the fact of his British naturalization, he may yet have misrepresented its date or surrounding circumstances so as to justify the action of the state court upon the facts shown to it. As the burden of proof rests upon the government, however, this inference is not cogent enough to warrant this court in finding that Simon willfully imposed upon the state court or obtained his naturalization by fraud. If, however, the state court was not imposed on, but acted with full knowledge of the facts, it must have found as a fact that Simon's residence in the United States for five years preceding his naturalization of April 20, 1901, was substantially unbroken. Therefore it must have ruled as matter of law that the British naturalization, which was obtained upon his application within these five years, did not interrupt the running of the statutory period of his residence in the United States. If the state court proceeded upon this ground, I must hold that it erred in matter of law, and so that Simon's naturalization was "illegally procured." Inasmuch as Simon's naturalization, as stated, was procured either (1) by his false and fraudulent narration of the facts connected with his British naturalization, or (2) by the error of the state court in ruling that the evidence warranted a finding that Simon had resided without interruption in the United States during five years prior to his naturalization, that naturalization was procured fraudulently or otherwise illegally.

This court need not now decide that an applicant for naturalization must have had and retained the intention of becoming an American citizen during every moment of the five-year period. It does

hold as matter of law that the continuous residence of five years in the United States necessary for naturalization is interrupted by a physical absence of seven months from the United States, during which time the alien obtains admission into another allegiance. In his Canadian oath of residence Simon substantially denied that, on June 18, 1906, his residence was in the United States. So far as residence involves an element of intention, he cannot now be allowed to contradict his own oath. Van Dyne on Naturalization, 95–105. It may be observed that the agreed facts here state no intention of taking up a continuous residence in the United States at the time of Simon's first arrival in New York, while his oath of residence taken in Canada expressly denies this intention. It is true that when he returned to Canada "he intended to return" to the United States, but this intended return may have been merely a return for a short period.

It should be added that the United States contended at the argument that this court has jurisdiction to cancel a certificate not only because it was procured by fraud or by error of law, but also because the court of naturalization erred in its findings of fact. This contention need not be disposed of at this time. As Simon's naturalization in the state court was procured either fraudulently or otherwise illegally, cancellation of the certificate is ordered.